Date signed April 21, 2011



PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

IN RE:                    :

                          :

LEELAND STATION, LLC      :     Case No. 08-16833PM

                          :         Chapter 11

            Debtor         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

## MEMORANDUM OF DECISION

Before the court is the claim of Fraser Forbes Company, LLC ("Fraser") for compensation on account of Debtor's sale of certain assets, as approved by this court's Order entered February 10, 2011 [D.E. #179]. The matter comes before the court on the Debtor's Motion to Enforce Order Authorizing Employment and Compensation of Bruce C. Winston and Fraser Forbes Company, LLC, as Real Estate Broker for Leeland Station, LLC [D.E. #176], and the responses filed by Fraser [D.E. #189] and Bank of America [D.E. #197]. The court heard the arguments of the parties and testimony from representatives of K. Hovnanian Homes of Virginia, Inc. ("K. Hovnanian"), the purchaser, Bank of America, N.A. ("the Bank"), a substantially under-secured creditor, and Fraser. Two specific issues are presented. First, was Fraser the procuring cause of the sale? And, if so, had its right to receive a commission expired under the Exclusive Right to Sell Agreement [Debtor Ex. #2] approved by this court's Order entered April 15, 2009 [D.E. #119]? For the reasons set forth herein, the court answers both questions in the negative. The court further finds that Fraser may not surcharge the Bank's collateral pursuant to 11 U.S.C. § 506(c).

The Exclusive Right to Sell Agreement between the Debtor and Fraser (the "Agreement") provided for a term ending July 31, 2009.  Fraser's compensation is governed by paragraph 6 of the Agreement that provided:

> 6.  COMPENSATION:  Seller agrees to pay a net commission of three percent (3%) of the total aggregate value of the Property as brokerage commission in consideration of Broker's general marketing program.  Said commission shall be deemed earned and payable in full, in cash, at the closing for the Property sold hereunder.  In the event there is no closing, then upon recordation of the deed.  Once this Agreement terminates, the Broker will be entitled to its full commission if any of the Broker's registered prospects execute a binding contract of sale within three hundred sixty-five (365) days of the conclusion of this Agreement that subsequently goes to settlement.  In the event that Seller fails to pay Broker, or otherwise fails to cause Broker to be paid, all or any portion of commission(s) and/or other compensation due Broker hereunder, Broker shall then also be entitled to recover from Seller, in addition to all commissions or other compensation due Broker, all of Broker's costs and expenses incurred in connection with collection of all such amounts due, including attorneys' fees and costs.
>
> Under a breach of contract between Buyer and Seller, Broker shall be entitled to ten percent (10%) of the deposit (but not more than its full commission as provided herein).

The purchaser, K. Hovnanian, was listed as prospect number 102 among the list of 193 firms listed on the Prospect Registration for Exclusive Right to Sell Agreement for Leeland Station (Fraser Ex. #1) submitted in compliance with paragraph 5.  The Purchase and Sale Agreement, said to be dated October 4, 2010, fell beyond the 365-day "tail" period that protected Fraser's commission in the event that one of identified prospects entered into a binding contract with the Debtor within that period.  The plain language of the Agreement, described in testimony as being substantially in the form proposed by Fraser, forecloses Fraser from receiving a commission, time having expired for it to be entitled to receive a commission on account of a sale to a registered prospect.  Fraser seeks to have this court alter the terms of a written contract that was essentially in the form that it created, a step the court cannot take absent universal consent.  The Agreement was a "special contract" that imposed conditions on Fraser's right to a commission so that under its terms there was no right to a commission on account of a binding contract of sale that was executed more than 365 days after July 31, 2009.  *See Shalimar Dev., Inc. v. F.D.I.C*, 515 S.E.2d 120, 123 (Va. 1999).

Even if Fraser were successful in recasting the Exclusive Right to Sell Agreement, it did

not meet its burden of proof that it was the procuring cause of the sale. There is no question that the Bank was the driving force behind the effort to sell the subject property. When Fraser was "in office," K. Hovnanian did not view the $20 million price tag that Fraser was saddled with as worthy of consideration. While K. Hovnanian had been contacted several times by Fraser representatives, nothing came of those efforts. It was only at such time when the Bank took a more realistic view of its situation and lowered its expectations that K. Hovnanian was contacted by another broker, said to have a Bank of America contact, who passed on the lowered demand to it. Thereupon, John Pellerito of K. Hovnanian called Ruth Rodrigues-Wilson, who handled the troubled loan for the Bank, expressing his interest to do the deal at a lower price. In due course, the various decision-makers for the Bank and K. Hovnanian agreed on terms and entered into the Purchase and Sale Agreement. But, throughout that stage of the proceedings, Fraser was out of the picture.

It is also clear that Fraser's efforts were frustrated by the price figure dictated by the Bank. The court suspects that, had the Bank been more realistic and enabled Debtor to lower the sales price when Fraser was fully active, the property would have been sold and Debtor possibly would have received considerably more than the Bank is paying for the property, particularly after the Bank's last exercise in chiseling the purchase price. But that is immaterial. The fact remains that the property never went to closing on a Fraser contract, nor could Fraser be said to be the procuring cause of the K. Hovnanian contract.

Fraser's lamentable situation seems to be a well-recognized occupational hazard of the brokerage business. Many years ago, it was said in a similar case where the time had run in a contract to sell airplanes:

> "'The rule of law applicable to this description of cases has been frequently announced in nearly every state in this country, with some slight variations of phraseology. It is concisely summed up in 4 R.C.L. p. 298, Sec. 43, as follows: 'It is not enough that the broker has devoted his time, labor, or money to the interest of his principal, as unsuccessful efforts, however meritorious, afford no ground of action. And it matters not that after his failure and the termination of his agency what he has done proves of use and benefit to the principal. In a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would never have met; he may have created impressions which under later and more favorable circumstances naturally lead to and materially assist in the consummation of a sale; he may have planted the very seed from which others reaped the harvest; but all that gives him no claim. It was part of his risk that, failing himself, not successful in fulfilling his obligation, others might

> be left to some extent to avail themselves of the fruit of his labor.  To entitle a
> broker to commissions upon a sale or transaction which is actually consummated,
> he must show that his efforts and services were the primary, proximate, and
> procuring cause thereof.'  And for this statement the author cites, among other
> cases *Keener v. Harrod*, 2 Md. (63), 70, 56 Am.Dec. 706; *Tinges v. Moale*, 25
> Md. 480, 90 Am.Dec. 73; and *Blake v. Stump*, 73 Md. 160, 20 A. 788, 10 L.R.A.
> 103."

*Tahir Erk v. Glenn L. Martin Co.,* 143 F.2d 232, 235 (CA4 1944) (quoting *Way v. Turner*, 96 A.
676 (1915)) .

As explained above, K. Hovnanian's interest in the property was ignited by the efforts of
a third party who had learned of the Bank's altered position and put into motion the resulting
agreement.  In light of these circumstances, Fraser has not established itself as a procuring cause
of the sale:

> To be the procuring cause of a sale the broker must have originated or caused
> a series of events which, without break in their continuity, result in the accomplishment
> of the prime object of his employment, which is, usually, to procure a purchaser ready,
> willing and able to buy on the owner's terms. *Wilson v. Schmidt & Wilson, Inc.*, *supra*, 184
> Va. at p. 649, 35 S.E. (2d) at p. 740. If his employment is to sell, he is not entitled to
> compensation until he procures a sale or a valid and enforceable contract of sale. *Snider v.
> New River Ins., etc., Corp.*, 187 Va. 548, 47 S.E.(2d) 398.
>
> In *Leicht-Benson, etc., Corp. v. Stone & Co.*, 138 Va. 511, 121 S.E. 883, 43
> A.L.R. 1100, this court said that a broker to be entitled to his commission must
> succeed. He may devote his time, labor and money in an effort to procure a purchaser, yet
> if he fails, abandons his efforts, or his authority is fairly and in good faith terminated, he
> does not earn his commission. A volunteer cannot recover commissions merely because he
> introduced the customer who finally bought from the owner. If the broker has failed to
> produce a buyer within the time specified in his contract, or if the seller has in good faith
> terminated an agency indefinite in time, and the owner thereafter sells, the broker is not
> entitled to commission upon the sale merely because the purchaser is one whom he
> introduced to the owner or to the property. *See also, Edwards v. Cragg*, 188 Va. 564, 569,
> 50 S.E.(2d) 281, 283. *Cf. Realty Co. v. Burcum*, 129 Va. 466, 106 S.E. 375.

*Ford v. Gibson,* 59 S.E. 2d  867, 870 (Va. 1950).

While the court finds no entitlement to compensation, Fraser's effort to establish a
priming lien to the Bank's lien on the sales proceeds is another lost cause.  Speaking for a
unanimous Court in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 14
(2000), Justice Scalia concluded that "11 U.S.C. § 506(c) does not provide an administrative
claimant an independent right to use the section to seek payment of its claim."[1]  This aspect of the

---

[1] 11 U.S.C. § 506(c) provides "The trustee may recover from property securing an
allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing
of, such property to the extent of any benefit to the holder of such claim, including the payment
of all ad valorem property taxes with respect to the property."

case involves the application of the plain language of a statute, and, as the Court instructs, when "as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. U.S.*, 242 U.S. 470, 485 (1917)).  This section empowers the trustee, not a third party such as Fraser, to seek to prime a secured creditor.

Despite all of the good faith efforts of Fraser to produce a purchaser, the court finds that it is not entitled to a commission under its Exclusive Right to Sell Agreement with the Debtor as a result of the sale of the Debtor's real estate to K. Hovnanian Homes of Virginia, Inc.  An appropriate order will be entered.


cc:
Louis J. Ebert, Esq. Rosenberg Martin Greenberg, LLP, 25 So. Charles St.,  Ste. 2115, Baltimore, MD  21201
Maria E. Chavez-Ruark, Esq., Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, Md 21202
Jennifer L. Kneeland, Esq., Linowes and Blocher LLP, 7200 Wisconsin Ave, Ste. 800, Bethesda, MD 20814
United States Trustee, 6305 Ivy Lane, Ste. 600, Greenbelt  MD  20770


**End of Memorandum**